UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HERITAGE FOUNDATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 23-cv-327 (APM) |
| DEPARTMENT OF JUSTICE | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

**I.**

In September 2022, Plaintiffs Heritage Foundation and Mike Howell submitted a two-part request under the Freedom of Information Act (FOIA) to Defendant U.S. Department of Justice, seeking information relating to labor hours expended by special agents of the Washington Field Office during the summer months of 2020 (May 21, 2020, to August 31, 2020). Part One of request sought records "sufficient to establish" the total number of labor hours worked during that period, and Part Two demanded records "sufficient to establish" the hours devoted "to investigations of any and all matters related to left wing domestic terrorism . . . includ[ing] 'violent, extremist agendas-anarchists like Antifa and other agitators' arising from the summer 2020 riots." Def.'s Mot. for Summ. J., ECF No. 13 [hereinafter Def.'s Mot.], Decl. of Michael G. Seidel, ECF No. 13-1 [hereinafter Seidel Decl.], ¶ 5, Ex. A. The FBI produced a one-page record in response to the first part of the request, but as to the second advised Plaintiff:

> The FOIA does not require federal agencies to answer inquiries, create records, conduct research, or draw conclusions concerning queried data. Rather the FOIA requires agencies to provide access to reasonably described, nonexempt records. The questions posed

> in the referenced letter are not FOIA requests because they do not comply with the FOIA and its regulations. Therefore, your request is being administratively closed.

*Id.*, Ex. F.

Defendant moves for summary judgment. *See* Def.'s Mot. Plaintiffs do not contest the agency's response to Part One of the request. Mem. in Support of Pls.' Mot. in Opp'n to Def.'s Mot., ECF No. 19 [hereinafter Pls.' Opp'n], at 2 n.1. Their dispute concerns Part Two. At issue is whether Plaintiffs properly exhausted administrative remedies as to that portion of the demand, and whether Defendant conducted an adequate search for records. Def.'s Mot. at 8–10; Pls.' Opp'n at 9–11.

The court finds that Defendant performed an adequate search with respect to Part Two of the request. It therefore does not reach the exhaustion issue. *See Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (stating that "the exhaustion requirement is not jurisdictional because the FOIA does not unequivocally make it so"). Accordingly, the court will enter judgment in favor of Defendant.

## II.

To demonstrate it conducted an adequate search, an "agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency must provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* An agency affidavit is accorded a presumption of good faith if it is "relatively detailed and non-conclusory, and . . . submitted in good faith." *Eddington v. U.S. Dep't of Defense,* 35 F.4th 833, 837 (D.C. Cir. 2022) (quoting

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). That presumption cannot be overcome with "purely speculative claims about the existence and discoverability of [the request]." *Id.* (quoting *SafeCard*, 926 F.2d at 1200) (alteration in original). The plaintiff must provide "'countervailing evidence' as to the adequacy of the agency's search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003) (internal citation omitted). "If a review of the record raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Id.* (citation modified).

In this case, Defendant's declaration from Michael Seidel is entitled to a presumption of good faith. It is "relatively detailed and non-conclusory" and explains why the FBI produced no records in response to Part Two of the request. *See Eddington*, 35 F.4th at 837; Seidel Decl.,

Seidel is the Section Chief of the Record/Information Dissemination Section of the FBI. Seidel Decl. ¶ 1. He states that, to identify responsive information, the agency turned to the Performance Management Unit (PMU), Resources Planning Office, in the Office of the Associate Deputy Director. Seidel Decl. ¶ 23. Seidel explains:

> PMU is responsible for organizing and making management data accessible to the FBI to impact decisions on program management, resource allocation and organizational planning. PMU structures and arranges information related to various aspects of the FBI operations and resources, and ensures that crucial data is readily available and easily retrievable when needed.

*Id.* PMU advised that its ability to report validated hours for specific cases assigned to the Washington Field Office was "limited." *Id.* ¶ 26. FBI agents record hours worked on cases and associate certain classification codes, but "there is no tracking mechanism for distinguishing cases related to specific events." *Id.* There is no classification code associated with matters such as "left wing domestic terrorism . . . includ[ing] 'violent, extremist agendas-anarchists like Antifa and other agitators' arising from the summer 2020 riots." *Id.* To fulfill Part Two of the request, the

3

FBI "would be required to answer inquiries, create records, conduct research, or draw conclusions concerning queried data which are not required under FOIA." *Id.* ¶ 27. The FBI "does not maintain the specific data sought by Plaintiffs" in Part Two of their request. *Id.* ¶ 32.

Plaintiffs submit two critiques of the search. First, grasping on to the word "limited," which PMU used to describe its capacity to retrieve labor hours data about specific events, Plaintiffs assert that the declaration lacks sufficient specificity to establish that responsive data does not exist. Pls.' Opp'n at 10. But that contention overlooks Seidel's explanation that "to fulfill Plaintiffs['] request" the agency would have to sift through the available data, analyze it, drawn inferences from it, and create a new record. Seidel Decl. ¶ 27. The declaration leaves no room for doubt that data responsive to Part Two does not independently exist.

Second, Plaintiffs fault the agency for not inquiring into whether the data sought "may have already been compiled" in some other form. Pls.' Opp'n at 10–11. As Plaintiffs put it: "[T]he FBI appears to only have searched for source data to produce 'records sufficient to show'; it appears they did not search for compilations of that data that answer the same question." *Id.* at 11. But Plaintiffs offer no "countervailing evidence" to believe that such a compilation exists. They do not assert that the FBI "failed to search particular offices or files where the document might well have been found." *Iturralde*, 315 F.3d at 315. They do not contend that the agency "failed or refused to interview government officials for whom there was strong evidence that they might have been helpful in finding the missing documents." *Id.* And Plaintiffs point to no "evidence that would indicate that at the time the Department searched its files there was reason to believe" that a responsive compilation of data was contained in the files. *Id.*; *see Eddington*, 35 F.4th at 838 (describing *Iturralde* as "listing ways government affidavit or declaration could be inadequate").

In the end, Plaintiffs merely speculate that a report or some other record exists that contains the highly specific information that they seek: verified labor hours spent by (1) a particular FBI field office (2) during a defined three-month period (3) on investigations into left-wing domestic terrorist groups like Antifa and "other agitators" that (4) arose out of "the summer 2020 riots." *See* Pls.' Opp'n at 10–11. Plaintiffs' supposition that such a data compilation *might* exist is not enough to raise substantial doubt about the adequacy of the agency's search.

### III.

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment, ECF No. 13. A final, appealable order accompanies this Memorandum Opinion.

Dated: July 23, 2025

Amit P. Mehta
United States District Judge